# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

PEGGY HAWKINS

VERSUS

AVALON HOTEL GROUP, LLC
D/B/A TOWNEPLACE SUITES BY
MARRIOTT GONZALES

CIVIL ACTION

NO. 12-570-SDD-RLB

## RULING

This matter is before the Court on the *Motion for Summary Judgment* filed by the Defendant, Avalon Hotel Group, LLC d/b/a Towneplace Suites by Marriott Gonzales ("Defendant" or "Avalon").[1] Plaintiff, Peggy Hawkins, has filed an *Opposition* to the motion.[2] Also before the Court is Defendant's *Motion to Exclude Untimely Disclosed Exhibits.*[3] Plaintiff has filed no opposition to this motion. For the reasons which follow, the Court finds that both of Defendant's motions should be granted.

## I.    Factual Background

On November 4, 2011, Plaintiff applied for a part-time position with Avalon's Towneplace Suites by Marriott in Gonzales ("the Hotel") as a laundry attendant in the

---

[1] Rec. Doc. No. 13.

[2] Rec. Doc. No . 15.

[3] Rec. Doc. No. 17.

Doc 654                                                1

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 1 of 23

housekeeping department. Plaintiff was hired for this position on November 8, 2011. During her employment with Avalon, Plaintiff also worked as a personal caregiver for Sunset Personal Care. Six months after Plaintiff began working at the Hotel, Avalon placed a new management team at the Hotel, led by LaTisha Mallet ("Mallet"), who joined the Hotel on May 1, 2012. Shortly thereafter, Plaintiff complained to Mallet that she was being required to clean more rooms than before Mallet arrived, and that she was being asked now to do more than laundry which she believed was all she was hired to do. Mallet responded that, as the nighttime housekeeping employee, Plaintiff's job description included such tasks.

General Manager Stephanie Ehrhard ("Ehrhard") began working at the Hotel on May 21, 2012. Upon her arrival at the Hotel, Ehrhard was instructed by upper management to review and evaluate the Hotel's current staffing and modify it to reduce excessive payroll. Based on the size of the Hotel, Ehrhard concluded that employees should be performing multiple tasks, *i.e.*, laundry attendants should be performing room housekeeping duties and also keeping public areas clean. Along with other members of the management team, Ehrhard conducted a position-by-position and department-by-department review. The team's goal was to identify redundant positions in an effort to combine these positions and reduce payroll; Plaintiff's laundry attendant position was found to be such a position.

Plaintiff contends that on May 23, 2013, while she was in the Hotel lobby getting coffee near the front desk, Ehrhard approached her from behind and propositioned her for a sexual relationship. Specifically, Plaintiff testified that Ehrhard stated, in these exact

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 2 of 23

words: "I would like to have [sic] sexual relationship with you."[4] Plaintiff contends she told Ehrhard that she was straight, to which Ehrhard "just dropped her arms" like she was disappointed.[5] Following this alleged encounter, Plaintiff finished her laundry duties but claims she "felt hurt" and was wondering to herself "is this for real."[6]

Plaintiff claims that she was off the day after the alleged proposition, and that when she returned to work on May 25, Ehrhard had eliminated her job as it had previously existed and increased Plaintiff's job duties. Plaintiff contends that the elimination of her job as laundry attendant and the increase of her new job duties on the day after she alleges she rebuffed Ehrhard's sexual advances, caused Plaintiff such distress that she could no longer work. Plaintiff alleges she went to the hospital with symptoms of blurry vision and nausea which she attributed to the alleged incident with Ehrhard. Plaintiff claims that when she missed work on May 26 and the days following, she called in each day and reported her doctor's excuse. The record reflects that Plaintiff hired a lawyer and filed a complaint with Avalon via e-mail on May 30, 2012 through the Defendant's corporate e-mail system.[7] Plaintiff was ultimately terminated on May 31, 2013.

Ehrhard contends that she remembers being introduced to Plaintiff by Mallet on the day she arrived at the Hotel. Ehrhard alleges that she next met with Plaintiff on May 25, 2012, to discuss Plaintiff's job duties at which time Plaintiff asked for a raise. Ehrhard contends the management team had discovered that Plaintiff had not been performing

---

[4] Deposition of Peggy Hawkins, Rec. Doc. No. 13-5, p. 66, lines 16-17.

[5] *Id.*, p. 72, lines 3-6.

[6] *Id.*, p. 74, lines 8-9.

[7] Rec. Doc. No. 15-4.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 3 of 23

housekeeping duties that were part of her laundry attendant position.  The team decided that a job title change would effectively indicate to Plaintiff that she was expected to complete these duties.  During this meeting between Ehrhard and Plaintiff, Defendant contends Interim Manager Linda Marshall and Avalon's Head of Human Resources, Sofiya Chaney, were seated within earshot just a few feet away.  At this meeting, Plaintiff's request for a raise was denied because raises occur only after a yearly performance review.  Defendant contends that Ehrhard and Plaintiff discussed her job changes and Plaintiff accepted them.  Plaintiff also requested and was provided her initial job application.  Plaintiff then reported to the laundry area where she stated she was leaving because she had a headache.

Ehrhard denies ever making any sexual advances towards Plaintiff or even seeing Plaintiff on May 23.  Ehrhard has also testified that she is not a homosexual and currently lives with her male fiancé.  In fact, Ehrhard contends the Plaintiff has completely fabricated the allegations.[8]  Mallet testified that for as long as she has known Ehrard, she has been with a man.[9]  Plaintiff testified that she had no knowledge that Ehrhard was homosexual.[10]  Plaintiff also testified that she had never heard any other employees discuss Ehrhard's sexual orientation.[11]  Plaintiff further testified that beyond the one alleged incident in the lobby, Ehrhard never called, texted, stared, e-mail, touched, or otherwise made advances

---

[8] Deposition of Stephanie Ehrhard, Rec. Doc. No. 13-8, p. 32.

[9] Deposition of LaTisha Mallet, Rec. Doc. No. 13-7, p. 45.

[10] Deposition of Peggy Hawkins, Rec. Doc. No. 13-5, pp. 81-82.

[11] *Id.* at pp. 82-83.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 4 of 23

towards Plaintiff.[12]  Plaintiff admitted she did not report the alleged incident to anyone on May 23, 2012.[13]  Plaintiff also testified that she did not voice any complaints of retaliation to Ehrhard upon receiving the new job duties during the May 25 meeting.[14]

Avalon contends that, beginning on May 26, 2012, the day following the meeting regarding Plaintiff's new job duties, Plaintiff did not appear for work.  Avalon also contends that, despite the fact that the Employee Handbook required Plaintiff to report any absences due to illness to management, Plaintiff only called the front desk, left her name, and advised that she was sick.[15]  Avalon avers that it was several days after Plaintiff had failed to report to work that she contacted Mallet advising of her illness.  When Mallet inquired about Plaintiff's illness and whether she had seen a doctor, Plaintiff allegedly claimed she would bring a note when she returned, but hung up without providing a date of return or any details about her alleged illness.[16]  Mallet stated that she attempted to call Plaintiff after this conversation but got no answer or voicemail.

Mallet reported to Ehrhard and Chaney that Plaintiff had missed several days of work.  Mallet believed that Plaintiff's unexcused absences and failure to directly contact management or present a doctor's note was cause for her termination under the Employee

---

[12] *Id.* at pp. 116-119.

[13] *Id.* at p. 95.

[14] *Id.* at p. 97.

[15] Rec. Doc. No. 13-10.

[16] *Id.*

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 5 of 23

Handbook.[17]  Avalon acknowledges that Plaintiff presented a doctor's note dated June 1, 2012, covering any absences from May 31, 2012 through June 5, 2012[18]; however, there was no doctor's note for the days missed prior to the decision to terminate.  Mallet testified that Chaney made the decision to terminate Plaintiff,[19] and Mallet prepared a separation notice form.[20]

Avalon contends that, throughout Plaintiff's employment, it had a detailed Employee Handbook which covered several topics including: equal opportunity of employment, sexual harassment reporting procedures, unexcused absenteeism, and grounds for immediate termination.[21]  The Handbook provided that any allegations of job-related harassment should be "promptly" reported to "your supervisor, department or division head/manager or director of human resources."[22]  The Handbook further instructed that "there is no need to follow any formal chain of command, when filing a complaint when discussing or expressing an issue of concern regarding alleged discrimination or harassment, and you may bypass anyone in your direct chain of command and file your complaint" at any time.[23]  The Handbook also instructed that employees must report to their immediate supervisor

---

[17] Deposition of LaTisha Mallet, Rec. Doc. No. 13-7, p. 47.

[18] Rec. Doc. No. 13-12.

[19] *Id.* at p. 32.

[20] Rec. Doc. No. 13-14.

[21] Rec. Doc. No. 13-6.

[22] *Id.* at p. 10 (AVALON-066).

[23] *Id.*

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 6 of 23

as soon as possible, but at least within 2 hours before a scheduled shift, any illness which prevented them from working.[24] It further provided that unexcused or excessive absences could be grounds for disciplinary action, including suspension and/or termination.[25]

Plaintiff submitted a claim to the Equal Employment Opportunity Commission ("EEOC") on June 15, 2012, and after receiving her Right to Sue letter, filed this lawsuit on September 14, 2012. Plaintiff asserts claims of same-sex sexual harassment, retaliation, and intentional infliction of emotional distress. Avalon has moved for summary judgment on the federal claims.

## II. Law and Analysis

### A. Motion *in Limine* To Exclude Untimely Disclosed Exhibits[26]

Defendant has filed a *Motion in Limine to Exclude Untimely Disclosed Exhibits* regarding medical evidence which Plaintiff referred to and attached as exhibits in her *Opposition* to Defendant's *Motion for Summary Judgment*. For the reasons set forth in the Defendant's supporting memorandum, the Court finds that the motion should be GRANTED. The Court will not consider the exhibits which were not properly disclosed under the Federal Rules of Civil Procedure. Furthermore, Plaintiff failed to respond to this motion; therefore, there is no basis in the record for allowing the late-produced material under any exception to the general rule.

---

[24] *Id.* at p. 12.

[25] *Id.*

[26] Rec. Doc. No. 17.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 7 of 23

## B.   Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[27]   The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[28]   A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[29]   If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[30]

If the moving party meets this burden, Rule 56 (c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[31]   The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla

---

[27] Fed. R. Civ. P. 56(c);  *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[29] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[30] *Id.* at 1075.

[31] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 8 of 23

of evidence.[32]  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[33]  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[34]  Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[35]

### C. Title VII Sex Discrimination

### 1. Discrimination "Based on Sex"

In a case of alleged same-sex harassment, the plaintiff must establish that the harasser's conduct constitutes sex discrimination.  If so, the next step is for the plaintiff to demonstrate that the challenged conduct meets the applicable standards for either a *quid pro quo* or hostile environment claim.[36]  In *Oncale v. Sundowner Offshore Servs., Inc.*,[37] the Supreme Court outlined three ways for a plaintiff to demonstrate that an incident of same-sex harassment constitutes sex discrimination: (1) that the alleged harasser made explicit or implicit proposals of sexual activity and provide credible evidence the harasser

---

[32] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[33] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075).  *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[34] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[36] *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474 (5th Cir.2002).

[37] 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 9 of 23

was homosexual; (2) that the harasser was motivated by general hostility to the presence of members of the same sex in the workplace; and (3) provide direct, comparative evidence of how the alleged harasser treated members of both sexes in a mixed-sex work place.[38] For a *quid pro quo* claim, the plaintiff must allege that she suffered a tangible employment action that resulted from her acceptance or rejection of her supervisor's alleged sexual harassment. A significant change in employment status is a tangible employment action.[39]

In *Cherry v. Shaw Coastal, Inc.*,[40] a case involving allegations of same-sex harassment by a supervisor, the Fifth Circuit noted that, "[i]n *La Day v. Catalyst Technology*,[41] we identified two types of evidence that could serve as credible evidence of homosexuality: (1) evidence that the harasser 'intended to have some kind of sexual contact with the plaintiff rather than to merely humiliate him for reasons unrelated to sexual interest', or (2) evidence that the harasser 'made same-sex sexual advances to others, especially to other employees.' [42] Thus if a plaintiff presents evidence that he was harassed by a member of the same sex, and that the harassment was sexual rather than merely humiliating in nature, that evidence is sufficient to support a verdict in the plaintiff's

---

[38] *Id.* at 80; *See also La Day*, 302 F.3d at 478.

[39] *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

[40] 668 F.3d 182, 188 (5th Cir. 2012).

[41] 302 F.3d at 480.

[42] *Cherry*, 668 F.3d at 188, quoting *LaDay*, 302 F.3d at 480.

favor."[43]

In this case, Plaintiff has presented no evidence under the second or third methods set forth above; thus, she is clearly proceeding under the first method of proof - that Ehrhard was homosexual and allegedly made an explicit proposal of sexual activity. Avalon argues that Plaintiff has failed to prove that she was discriminated based on sex because she has failed to present competent summary judgment evidence that the alleged harasser is a homosexual. Thus, Avalon contends that, even if the Court accepted the unsubstantiated allegation that Ehrhard propositioned Plaintiff for a sexual relationship, Plaintiff has failed to satisfy her burden of providing evidence that Ehrhard is a homosexual. Avalon cites Plaintiff's own deposition testimony wherein she acknowledged that she did not know if Ehrhard was gay.[44] In her deposition, Ehrhard emphatically denied that she is homosexual or that she had ever engaged in homosexual behavior,[45] and also testified that she has a son and lives with her male fiancé.[46] Avalon also cites the testimony of co-worker Latisha Mallet who testified that, for as long as she had known Ehrhard, Ehrhard was in a heterosexual relationship.[47] Furthermore, Plaintiff presented no evidence to show that Ehrhard was homosexual or made any similar types of overtures towards other co-workers and/or employees as alleged by Plaintiff. While this alleged

---

[43] *Id.*

[44] Rec. Doc. No. 13-5, p. 83.

[45] Rec. Doc. No. 13-8, p. 14.

[46] *Id.* at p. 10; p. 14.

[47] Rec. Doc. No. 13-7, p. 45.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 11 of 23

incident occurred during the day in the lobby of a hotel, Plaintiff has not produced any witnesses to corroborate her allegations or to even state that they witnessed a conversation between Plaintiff and Ehrhard near the coffee pot on this date.

Plaintiff responds that the requirement that she provide evidence that the alleged harasser is homosexual is "ridiculous."[48] Plaintiff rests solely on the allegation that her female supervisor asked her for sex as sufficient to establish Ehrhard's propensity toward the same sex and survive summary judgment.

While the Court must view the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to offer sufficient summary judgment evidence to defeat Avalon's motion. Although Plaintiff expresses her distaste for the requirement to provide evidence of the alleged harasser's homosexuality, this is indeed the law. *Oncale* requires that a plaintiff show that the alleged harasser made "explicit or implicit proposals of sexual activity" **and** provide "credible evidence that the harasser was homosexual."[49] Applying this standard, the Fifth Circuit held in *Love v. Motiva Enterprises, L.L.C.* that "Love's failure to show through sufficient proof that [the alleged harasser] is homosexual is by itself fatal to her claim."[50] The record clearly shows that Plaintiff has failed to produce any evidence, or to rebut the evidence provided by Avalon, showing that Ehrhard is homosexual or has

---

[48] Rec. Doc. No. 15-3, p. 8.

[49] *Oncale*, 523 U.S. at 80-81.

[50] 349 F. App'x 900, 904, 2009 WL 3334610 (5th Cir. Oct. 16, 2009); *see also Noto v. Regions Bank*, 84 F. App'x 399, 402, 2003 WL 22965568 (5th Cir. Dec. 17, 2003). Despite Plaintiff's protests that *Love* is inapplicable to this case (a *quid pro quo* case) because it involved a hostile work environment claim, the Court notes that this part of the analysis is applicable to the case at bar. This particular determination of whether a plaintiff has established that the discrimination was "based on sex" is made at the outset before a court arrives at the question of *quid pro quo* or hostile work environment.

Doc 654                                                                 12

exhibited homosexual behavior in the past. Plaintiff contends her allegation that Ehrhard approached her for sex suffices as evidence of Ehrhard's homosexuality; however, nothing in the record supports this unsubstantiated assertion. "[A]t the summary judgment stage, we require evidence - not absolute proof, but not mere allegations either."[51] Furthermore, "unsubstantiated assertions are not competent summary judgment evidence."[52] Likewise, "[u]nsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment."[53] The non-moving party's burden "will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[54] Although all reasonable inferences are drawn in favor of the nonmoving party, "[a] court ultimately must be satisfied that 'a reasonable jury could not return a verdict for the nonmoving party.'"[55] The Court finds that Plaintiff has simply not presented enough evidence for a reasonable jury to conclude that Ehrhard was homosexual and that Ehrhard was making sexual advances towards Plaintiff.[56] Thus,

---

[51] *Ontiveros v. City of Rosenberg*, 564 F.3d 383 (5th Cir. 2009).

[52] *Garcia v. LumaCorp., Inc.*, 429 F.3d 549, 555 (5th Cir. 2005)(citing *Celotex*, 477 U.S. at 324)(quotation omitted)).

[53] *Bouvier v. Northrup Grumman Ship Systems, Inc.*, 350 F. App'x 917, 920, 2009 WL 3444765 (5th Cir. Oct. 26, 2009)(citing *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)).

[54] *Little v. Liquid Air Corp.*, 37 F.3d at 1075.

[55] *Rucker v. Sears, Roebuck and Co.*, No. 12-1540, 2013 WL 486784 (E.D. La. Feb. 6, 2013), quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395 (5th Cir. 2008)).

[56] To the extent Plaintiff argues her medical evidence (not considering those exhibits which were excluded for the reasons set forth above) is summary judgment evidence which supports her claim, this argument fails. The exhibits only show that Plaintiff was treated for the conditions of which she complained. The fact that a doctor/nurse noted Plaintiff's allegations against Ehrhard as the cause of her condition is not competent

Doc 654                                    13

summary judgment is proper on this claim.

## 2. *Quid Pro Quo* Claim[57]

Even if Plaintiff could set forth a claim of discrimination "based on sex," the Court finds that Plaintiff fails to establish a claim of *quid pro quo* harassment. In order for a plaintiff to show that she was subjected to *quid pro quo* harassment, the plaintiff must present evidence that she "was subject to a 'tangible employment action that resulted from [her] acceptance or rejection of his supervisor's alleged sexual harassment.'"[58] Also, "[a] clear showing of a tangible employment action results in *per se* vicarious liability for the employer."[59]

"A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

---

summary judgment evidence supporting her claim; it is simply a statement of what Plaintiff told medical personnel and not a diagnosis that her conditions were caused by the alleged sexual harassment.

[57] Plaintiff's *Complaint* alleges she suffered an "extreme hostile work environment." Rec. Doc. No. 1, p. 4, ¶ 12. In the parties' *Joint Status Report*, Plaintiff also lists as a pending issue: "Whether the actions of Stephanie rise to the level of severe and pervasive conduct." Rec. Doc. No. 5, p. 3. Despite these allegations, Plaintiff contends in her *Opposition* to Avalon's *Motion for Summary Judgment* that the *Love* case is inapplicable because it is a hostile work environment case, and "[t]his is a tangible employment action/retaliation case." Rec. Doc. No. 15-3, p. 13. Plaintiff failed to argue or offer any evidence of a hostile work environment; therefore, the Court considers this claim waived. Furthermore, the Court notes that under applicable Fifth Circuit jurisprudence, the established facts and evidence in the record of this case do not support a finding of severe or pervasive conduct as required by law. Even in the event that Plaintiff could satisfy the requirements of a *prima facie* hostile work environment claim, Avalon would be entitled to the *Faragher/Ellerth* affirmative defense based on the record before the Court.

[58] *Calmes v. JPMorgan Chase Bank*, — F.Supp.2d —, 2013 WL 1856064, at * 7 (E.D. La. May 1, 2013)(quoting *LaDay*, 302 F.3d at 481)(citations omitted).

[59] *Id.*, citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000). Plaintiff concedes this is not a hostile work environment case; as such, the *Faragher/Ellerth* affirmative defense relied upon by Avalon is unavailable in a *quid pro quo* case. (*See also, Donaldson v. CDB, Inc.*, 335 F. App'x 494, 500, 2009 WL 1916466 (July 6, 2009)("With *quid pro quo* harassment ... an employer is subject to vicarious liability, and no affirmative defense is available.")).

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 14 of 23

responsibilities, or a decision causing a significant change in benefits."[60] In most cases, "a tangible employment action results in direct economic harm."[61] To prove that a tangible employment action has occurred, "the plaintiff must show that the action resulted from the plaintiff's 'acceptance or rejection of his supervisor's alleged sexual harassment.'"[62]

Avalon contends Plaintiff cannot show a tangible employment action because it was not the alleged harasser (Ehrhard) but Sofiya Chaney who made the decision to terminate Plaintiff. Avalon cites Fifth Circuit and district court jurisprudence where courts have concluded that no tangible employment action occurred when the person making the decision was someone other than the alleged harasser.[63] Without credible evidence that Ehrhard decided to terminate Plaintiff, Avalon argues there is no evidence of a causal connection between Plaintiff's termination and the alleged harassment.

Plaintiff contends that the elimination of her position constituted a tangible employment action which changed the terms and conditions of her employment. Plaintiff also cites Ehrhard's deposition testimony where she was asked who made the decision to terminate Plaintiff and answered: "I don't know who made the final decision. I know that she had failed to report to work for numerous days. I would assume it was probably me who made that final decision. But I probably said go ahead and do the paperwork after the

---

[60] *Id.* at *8, quoting *La Day*, 302 F.3d at 481-82 (5th Cir. 2002)(quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998))(internal quotation marks omitted).

[61] *Id.*, citing *Ellerth*, 524 U.S. at 761-61.

[62] *Id.*, quoting *Casiano*, 213 F.3d at 283.

[63] *See Calmes*, 2013 WL 1856064 at * 8; *Moss v. Wal-Mart Stores, Inc.*, No. 04-3090, 2007 WL 846530 at *8 (E.D. La. Mar. 19, 2007).

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 15 of 23

last day she didn't come to work."[64]  Thus, Plaintiff contends there is at least a genuine issue of material fact as to whether the alleged harasser made the decision to terminate Plaintiff.

The Court finds that the title change and additional job duties given to Plaintiff in the May 25, 2012, meeting do not constitute a tangible employment action.  First, the record is clear that Plaintiff's job was not eliminated in the sense that she suffered any loss of job; rather, her title was changed to reflect that her position required more than just doing laundry, which she had allegedly previously misunderstood.  Moreover, "[a]n employee does not suffer a tangible employment action when a supervisor merely 'change[s] her work schedule and ask[s] her to perform tasks she had not previously been asked to perform.'"[65]  The record also reveals that Plaintiff did not suffer any loss of wages or benefits and was not asked to work more or less hours under the new job title.  As such, the only potential tangible employment action suffered by Plaintiff was her termination.

The Court finds that, based on the evidence in the record, Plaintiff has failed to show that her termination resulted directly from her "acceptance or rejection of her supervisor's alleged sexual harassment" as required by the law.[66]  While Plaintiff cited testimony where she alleges Ehrhard admitted that she made the termination decision, Ehrhard's actual testimony is not so clear.  Ehrhard testified that she "assume[d]" she

---

[64] Rec. Doc. No. 13-8, p. 30.

[65] *Williams v. Barnhill's Buffet, Inc.*, 290 F. App'x 759, 762, 2008 WL 3911068 (5th Cir. Aug. 26, 2008)(quoting *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999)).

[66] *Casiano,* 213 F.3d at 283.

Doc 654                                         16

made the decision.  However, later in her deposition Ehrhard testifies as follows:

> Q:  All right.  You didn't make the decision to terminate Peggy Hawkins?
>
> A:  No.  Peggy Hawkins did not show up for work.  We consider that job abandonment.
>
> Q:  Who made the decision to fill out the paperwork and terminate her?
>
> A:  I'm not 100 percent sure.  I'm assuming it was myself because I usually do say do the paperwork.  This is so many days, do the paperwork.[67]

Avalon cites Mallet's deposition testimony that it was she who determined that after failing to show for work and properly report her illness, Plaintiff could be subject to termination pursuant to the Employee Handbook.[68]  Mallet directly testified that Sofiya Chaney terminated Plaintiff.[69]  Mallet also testified that she had no knowledge of Plaintiff's sexual harassment allegations against Ehrhard until after Plaintiff was terminated.[70]  Mallet testified that she advised both Ehrhard and Chaney that Plaintiff had not reported to work for several days,[71] and Chaney instructed Mallet to draft the separation paperwork.[72]  Ehrhard also testified that she was unaware of Plaintiff's allegations of sexual harassment

---

[67] Rec. Doc. No. 13-8, p. 42, lines 17-25; p. 43, line 1.

[68] Rec. Doc. No. 13-7, p. 47, lines 3-10 ("Q: And what is your reason for recommending termination of Peggy Hawkins?  A: Because she never showed up for her scheduled shift.  She never presented a doctor's note stating she needed to be off of work.  And the – in the handbook it states three no call no shows is – could be termination.").

[69] *Id.* at p. 32, lines 10-11.

[70] *Id.* at p. 37, lines 3-14.

[71] *Id.* at p. 33, lines 21-25.

[72] *Id.* at p. 34, lines 18-24

Doc 654                                              17

until weeks after Plaintiff had been terminated.[73]  The record is clear that the decision to terminate Plaintiff was in response to her failure to show for work without calling in to management or providing a doctor's excuse in clear violation of the Employee Handbook.[74] Plaintiff has presented no summary judgment evidence to controvert the evidence which supports this fact other than her own speculation and conclusory allegations.  Furthermore, Plaintiff fails to provide any justification for her failure to follow the guidelines set forth in the handbook.

Therefore, even if Plaintiff could establish that her alleged discrimination was "based on sex," she has failed to satisfy the elements required for a *quid pro quo* claim.  Avalon would also be entitled to summary judgment on this basis for this claim.[75]

## D.    Retaliation

Plaintiff also claims that she was fired in retaliation for reporting the alleged harassment to Human Resources.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: "(1) [s]he participated in a protected activity; (2) [her] employer took an adverse employment action against [her]; and (3) there is a causal

---

[73] Rec. Doc. No. 13-8, p. 31, lines 14-19.

[74] Plaintiff has made no argument and presented no evidence that Mallet and Chaney served as Ehrhard's "cat's paw" in this matter so as to causally link the protected activity to Plaintiff's termination.  *See Evans v. Texas Dept. of Transp.*, 547 F.Supp.2d 626 (E.D. Tex. 2007).  Likewise, no causal link exists between an employer's termination and her supervisor's alleged harassment, if the terminating authority makes his decisions not based on the tainted supervisor's recommendation.  *Long v. Eastfield College*, 88 F.3d 300, 307 (5th Cir. 1996).

[75] Conversely, even if Plaintiff's speculation was sufficient to create a genuine issue of material fact that she suffered a tangible employment decision resulting from her refusal of Ehrhard's alleged advances, she has failed to satisfy the first test of showing that the alleged discrimination was "based on sex" as set forth previously herein.

Doc 654                                        18

connection between the protected activity and the adverse employment action."[76] An employee engages in a protected activity when she opposes a practice that is unlawful under Title VII or makes a charge, testifies, assists, or participates in an investigation, proceeding, or hearing under Title VII.[77] To establish that an adverse employment action has occurred, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse.'"[78] An action is considered "materially adverse" if "it would dissuade a reasonable employee from reporting a charge of discrimination to the EEOC, the courts, or their employer."[79] "In the context of a retaliation claim, causation is a 'but for' test in which the plaintiff must show that but for the protected activity, the adverse employment action would not have occurred."[80] Once a plaintiff has presented a *prima facie* case, "the burden shifts to the employer to present 'a legitimate ... non-retaliatory reason for its employment action.'"[81] "'If the employer meets this burden or production, the plaintiff then bears the burden of proving that the employer's reason is a pretext for the actual retaliatory reason.'"[82]

Avalon contends Plaintiff cannot satisfy a *prima facie* case of retaliation because

---

[76] *Calmes*, at * 11, citing *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008).

[77] 42 U.S.C. § 2000e-3(a).

[78] *Calmes*, at *11, quoting *Burlington*, 548 U.S. at 68.

[79] *Id.*, citing *Burlington*, 548 U.S. at 68 (citations omitted).

[80] *Id.*, citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519-20 (5th Cir. 2001).

[81] *Id.*, quoting *Aryain*, 534 F.3d at 484 (quotations omitted).

[82] *Id.*, quoting *Aryain*, 534 F.3d at 484.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 19 of 23

she did not participate in protected activity under Title VII. Avalon contends Plaintiff failed to properly report any alleged harassment to Human Resources in compliance with the Employee Handbook; thus, she has failed to show that she participated in protected activity as required. Avalon also contends Plaintiff cannot establish any causal connection between her termination and any protected activity since she was clearly terminated for unexcused absences and failure to properly advise her supervisor or provide doctor's notes as required by the handbook.

Alternatively, if Plaintiff could establish a *prima facie* case of retaliation, Avalon argues Plaintiff has failed to prove that the legitimate, non-retaliatory business reason for Plaintiff's termination is a pretext for discrimination. Avalon presented evidence that Plaintiff's termination was for unexcused absences, failing to properly advise her supervisor of illness-related absences, and failing to provide a doctor's note as instructed.

Plaintiff contends that both the change in her job title and duties and her ultimate termination were in retaliation for her refusal to accept Ehrhard's alleged sexual proposition and for filing a formal complaint about the alleged incident. Plaintiff claims that because of these actions, she was terminated within four hours of filing her complaint. Plaintiff also attempts to argue that because she was terminated after her complaint was received, "there is a mixed motive as to the termination that creates a genuine issue of material fact as to the reason for the termination." However, Avalon is correct that a retaliation claim is governed by a standard of "but for" causation, not a mixed-motive standard.[83]

---

[83] *See Univ. of Tex. SW. Med. Ctr. v. Nassar*, — U.S. —, 133 S.Ct. 2517 (2013).

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 20 of 23

Avalon also contends it had a legitimate business reason for changing Plaintiff's job title and duties. Avalon argues that the "added tasks" were always part of Plaintiff's job requirements, and it only changed Plaintiff's job title to remove any doubt that Plaintiff's job duties were not limited to laundry. Additionally, Avalon offers evidence that the new management team evaluated all employees and positions and made changes as a cost-reducing measure, devoid of any retaliatory motive. As noted previously, Plaintiff's actual job duties, salary, hours, and benefits remained unchanged. Avalon contends that Plaintiff has failed to meet her burden of providing evidence that this legitimate, non-retaliatory reason is a pretext.

The Court finds that Plaintiff has failed to establish genuine issues of material fact to overcome Avalon's motion for summary judgment on her retaliation claim. Even assuming, without expressly finding, that Plaintiff has satisfied the three requirements for a *prima facie* case of retaliation,[84] Plaintiff has failed to provide summary judgment evidence of pretext for the legitimate, non-discriminatory reasons given for both actions which she claims were retaliatory. Plaintiff has not presented any evidence to the Court that would indicate the reasons given by Avalon for its actions were not the "but for" reasons for both the change in job title/duties and Plaintiff's termination. Plaintiff has failed

---

[84] The Court is not convinced that Plaintiff has satisfied the causal connection requirement as it is unclear whether any member of Avalon's staff was aware of the letter sent by Plaintiff's counsel to Human Resources prior to Plaintiff's termination. It is clear from the record in this case that Plaintiff's unexcused absences and failure to properly report and provide doctor's notes for her alleged illnesses were under investigation prior to any complaint being made by Plaintiff to Human Resources. However, giving Plaintiff all benefit of the doubt, the Court conducts the retaliation analysis assuming *arguendo* that Plaintiff has carried her *prima facie* burden.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 21 of 23

to show that Avalon's assertions are "false or unworthy of credence."[85] The only "evidence" that Plaintiff has offered to support this claim is her own deposition testimony wherein she testified that she believes that the only reason Ehrhard gave her extra duties was because Plaintiff refused Ehrhard's alleged offer of a sexual relationship.[86] Plaintiff also contends the timing itself is evidence of pretext in this case; however, the Court disagrees. While it is true that in some instances the temporal proximity between the protected activity and the adverse employment action may be sufficient, that is not so in this case. The record is clear that Plaintiff's unexcused abenses and failure to properly report her illness-related absences were being investigated prior to her complaint being made by Mallet, who had no knowledge of Plaintiff's allegations against Ehrhard at the time. There is ample evidence in the record that Plaintiff's job title and duties were changed as part of a reduction in costs management plan, and that Plaintiff was terminated for excessive unexcused absences and failure to follow company policy relating to those absences. Plaintiff's subjective beliefs of retaliation and the temporal proximity of her termination with the filing of her complaint are insufficient, by themselves, to show pretext and allow a reasonable juror to conclude from the summary judgment evidence that Avalon would not have terminated Plaintiff "but for" her complaint. There is simply no evidence in the record to support Plaintiff's claim of retaliation, and Avalon is entitled to summary judgment on this claim.

---

[85] *See Laxton v. Gap, Inc.*, 333 F.3d 572, 580 (5th Cir. 2003).

[86] Rec. Doc. No. 13-5, pp. 14-50.

## E.    Intentional Infliction of Emotional Distress

Neither party raised Plaintiff's claim of intentional infliction of emotional distress.[87] While the Court is inclined to grant summary judgment on Plaintiff's claim for intentional infliction of emotional distress based on the current record, under Fifth Circuit precedent and Federal Rule of Civil Procedure 56(f), a court may not grant summary judgment *sua sponte* on a ground not raised by the parties without giving notice to the parties in order for them to brief the issue.[88]    Therefore, the Defendant is ordered to brief this issue within 14 days from the date of this Ruling; Plaintiff shall have 14 days thereafter to file a response.[89]

## III.    Conclusion

For the reasons set forth above, the *Motion for Summary Judgment* by Defendant Avalon Hotel Group, LLC, d/b/a Towneplace Suites by Marriott Gonzales, is hereby GRANTED.[90]    Plaintiff Peggy Hawkins' federal claims are hereby DISMISSED with prejudice.    The parties are ordered to brief Plaintiff's intentional infliction of emotional distress claim as set forth above.

BATON ROUGE, Louisiana, this _4_ day of December, 2013.

*Shelly Dick*

**SHELLY D. DICK, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[87] *See* Rec. Doc. No. 1, p. 4, ¶13. The Court has pendent jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

[88] *Wernecke v. Garcia*, 452 F. App'x 479, 482, 2011 WL 5331598 (5th Cir.  Nov. 7, 2011)(citing *Baker v. Metro Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004)).

[89] The parties are advised that **only** the claim of intentional infliction of emotional distress is to be briefed.

[90] Rec. Doc. No. 13.

Case 3:12-cv-00570-SDD-RLB   Document 18   12/04/13   Page 23 of 23